IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**SGS NORTH AMERICA, INC.**
**Employer Below, Petitioner**

FILED
**February 3, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-266**        (JCN: 2022010399)

**KEVIN E. VANDALL,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner SGS North America, Inc. ("SGS") appeals the August 17, 2022, Interlocutory Order, and the May 30, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Kevin E. Vandall timely filed a response.[1] SGS filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which granted Mr. Vandall a 10% permanent partial disability ("PPD") award for occupational pneumoconiosis ("OP").

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the lower tribunal's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Vandall signed an Employees' Report of Occupational Pneumoconiosis dated August 18, 2021. Mr. Vandall indicated that he was last exposed to minute particles of dust on June 7, 2020, when he ceased working due to being laid off. Mr. Vandall stated that he worked for SGS from June of 2005 through June 7, 2020. Mr. Vandall explained that he was employed as a lab tech and prep tech for SGS, and that he did coal testing. Mr. Vandall alleged that he was exposed to dust in this job.

Pulmonary function testing was performed at New River Health on August 19, 2021. The FVC was 95% of predicted. The FEV1/FVC was 101% of predicted. The interpretation was a mild reduction in the DLCO. The carboxyhemoglobin was not

---

[1] SGS is represented by Michael Crim, Esq. Mr. Vandall is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

1

indicated. A chest x-ray taken on August 19, 2021, was read by Afzal Ahmed, M.D., on August 29, 2021. Dr. Ahmed's impression was simple pneumoconiosis.

D. Doyle, M.D., completed a Physicians' Report of Occupational Pneumoconiosis dated September 27, 2021. The report stated that Mr. Vandall made complaints of shortness of breath when walking on flat surfaces and indicated that he frequently had to stop and take breaks when doing normal chores around the house. Dr. Doyle noted that Mr. Vandall has dyspnea with exertion. Mr. Vandall had normal breathing sounds with no clubbing. There was no coronary artery bypass grafting. Mr. Vandall had one stent with no edema.

By order dated December 8, 2021, the claim administrator rejected the claim for OP on a non-medical basis. Mr. Vandall protested this order to the Board.

On April 21, 2022, Mr. Vandall gave a deposition regarding his claim. He testified that he worked for SGS since June of 2005 and explained that SGS is primarily a coal testing laboratory. Mr. Vandall indicated that he was initially hired by SGS for belt line maintenance, where he maintained an overland belt that carried coal. While Mr. Vandall was employed by SGS, he normally worked twelve-hour shifts, five to seven days a week. Mr. Vandall testified that he was exposed to coal dust while employed by SGS when coal shifted through the feeders and chutes and was dumped off the conveyor belt. After five years in this position, Mr. Vandall was transferred to the main lab in Sophia, West Virginia, where he worked periodically for the next ten years. During this time frame, Mr. Vandall stated that he operated a truck auger and monitored trucks dumping coal from one site to another. Mr. Vandall recalled that when operating the truck auger, he was exposed to some dust, but that it was not unbearable. For the last six years of his employment at SGS, Mr. Vandall worked exclusively at the amin lab for eight to ten hours per day.

Mr. Vandall explained that, while working at the SGS main lab, he would take samples of coal and run them through a large crusher, which crushed them down into smaller pieces. Once the coal was pulverized to a fine powder, Mr. Vandall indicated he would run it through a riffler to cut it down to a specific amount, and then he would bottle the sample and take it to the lab. Mr. Vandall indicated that most of the dust occurred when he ran the coal through a pulverizer. He testified that dust collected on the equipment, and that he would cough up dust after a shift. Mr. Vandall stated that he was also exposed to dust when he performed plant studies, in which he collected samples to evaluate the efficiency of a plant.

In July of 2022, James Douglas Leeber, the Senior Manager of Operations Support for SGS, completed an affidavit regarding Mr. Vandall's claim. In this affidavit, Mr. Leeber stated that Mr. Vandall worked for SGS on the Winifrede Beltline and that his work included, among other things, weed eating, greasing the belt, removing limbs and branches, raking up debris, and shoveling coal that fell off the beltline. Mr. Leeber noted that Mr. Vandall would not have been exposed to dust while performing these tasks on the beltline,

and that SGS trained him on the use of breathing protection and made respirators available to him. Mr. Leeber advised that Mr. Vandall was also employed as a water sampler, where he would not have been exposed to a dust hazard. Mr. Leeber estimated that 60-70% of this job was driving between locations, and 30-40% would include the collection of water samples.

Mr. Leeber indicated that Mr. Vandall was an on-site manager at SGS' Tom's Fork Facility, where he would spend about 60% of the time in the prep building or the office building, which both had mechanical ventilation. Inside the prep building or office, Mr. Leeber stated that Mr. Vandall would not have been exposed to a dust hazard. Mr. Vandall worked as a truck auger operator at the SGS location in Pineville for about one year, and Mr. Leeber indicated that he would not have been exposed to a dust hazard while operating the truck auger. At the Sophia Beckley facility, Mr. Vandall's primary job was retrieving coal samples. The facility was incorporated into the mechanical dust collection system that removed and transported particulate matter and fumes through pipes and filters and deposited them into an enclosed 55-gallon drum. Mr. Leeber stated that he had never witnessed any airborne dust in the prep area.

The Board issued an Interlocutory Order dated August 17, 2022, which reversed the claim administrator's order denying Mr. Vandall's application for OP benefits. The Board held Mr. Vandall's claim compensable on a nonmedical basis and found that Mr. Vandall was entitled to the rebuttable presumption set forth in West Virginia Code § 23-4-8c(b) (2009) ("the presumption").[2]

Mr. Vandall was examined by the OP Board on September 19, 2023. The OP Board made a diagnosis of OP with 10% pulmonary function impairment. Upon examination, Mr. Vandall was determined to be in good general clinical condition, and he was not in any respiratory distress at rest. His chest cage was well formed, and there were no rales or wheezing present. Significant findings were due to diffusion studies made for the OP Board on September 19, 2023. Exercise testing was not performed due to heart disease. The chest

---

[2] West Virginia Code § 23-4-8c(b) provides:

If it can be shown that the claimant or deceased employee has been exposed to the hazard of inhaling minute particles of dust in the course of and resulting from his or her employment for a period of ten years during the fifteen years immediately preceding the date of his or her last exposure to such hazard and that the claimant or deceased employee has sustained a chronic respiratory disability, it shall be presumed that the claimant is suffering or the deceased employee was suffering at the time of his or her death from occupational pneumoconiosis which arose out of and in the course of his or her employment. This presumption is not conclusive.

x-rays made for the Board were within normal limits with no evidence of OP. Pulmonary function testing showed that the FVC was 92% of predicted. The FE1/FVC was 107% of predicted. The DLCO was 69% of predicted, and the DL/VA was 77% of predicted. The carboxyhemoglobin was 1.8. The OP Board noted that Mr. Vandall had a history of smoking one pack per day for twenty years.

A final hearing was held on April 16, 2025, to take the testimony of the OP Board. John Willis, M.D., the OP Board radiologist, reviewed the x-rays taken on September 19, 2023, and indicated that the films were of good quality, and were normal with no evidence of OP or other significant pathology. Jack Kinder, M.D., the OP Board chair, testified that the OP Board evaluated Mr. Vandall on September 19, 2023, and recommended 10% impairment based on an abnormal diffusion study, which was 69%. Dr. Kinder indicated that all of the impairment was attributable to OP because this was a presumptive claim. Dr. Kinder addressed Mr. Vandall's other health conditions, including hypertension and morbid obesity, but concluded that there was not enough information to rebut the presumption to a 0%. Dr. Kinder testified that he would not have attributed the reduced DLCO to OP had Mr. Vandall not been entitled to the presumption, because the x-ray was normal with no evidence of OP or other pathology.

Dr. Kinder indicated that he reviewed the diffusion testing performed on August 19, 2021, at New River Health, and agreed that the study was slightly outside of the two-year period that the OP Board would typically consider but noted that the single breath diffusion study obtained at the time depicted a 66% of predicted. Dr. Kinder further agreed that the OP Board evaluated Mr. Vandall on September 19, 2023, and that the single breath diffusion study performed on Mr. Vandall was valid and reproducible on its face. Dr. Kinder testified that the carboxyhemoglobin level of 1.8 was within acceptable limits. SGS did not provide any records that would rebut the presumption that the Board granted in this case. Dr. Kinder concluded that Mr. Vandall had OP with 10% pulmonary function impairment.

By order dated May 30, 2025, the Board affirmed the claim administrator's order and found that Mr. Vandall has 10% WPI related to OP. The Board found that the OP Board's findings were not clearly wrong. SGS now appeals the Board's August 17, 2022, Interlocutory Order, and the Board's May 30, 2025, Final Order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the

petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, SGS argues that the Board's August 17, 2022, Interlocutory Order was clearly wrong in finding that Mr. Vandall had more than ten years of exposure to a dust hazard which entitled him to the presumption. Further, SGS asserts that the Board's order dated May 30, 2025, was clearly wrong and should be reversed because the OP Board's decision and recommendation were based on the claim being subject to the presumption.

Here, the Board's August 17, 2022, Interlocutory Order found that Mr. Vandall's claim is compensable and subject to the presumption. The Board determined that the evidence established exposure to the hazards of OP during Mr. Vandall's employment for at least ten years during the fifteen years immediately preceding his date of last exposure.

Upon review, we conclude that the Board's August 17, 2022, Interlocutory Order, which held the claim compensable, does not sufficiently address the evidence of record. As we held in *Boyce v. Quinwood Coal Co*., LLC, __ W. Va. __, __, 923 S.E.2d 661, 665 (2025) "this Court has consistently stated that it is not in a position to reweigh the evidence at the appellate stage." Below, the Board merely made a conclusory statement that the evidence established Mr. Vandall's exposure to the hazards of OP for at least ten years during the fifteen years immediately preceding his date of last exposure. In determining that Mr. Vandall satisfied the presumption, the Board did not analyze and weigh the evidence or make any credibility determinations regarding Mr. Vandall's testimony or Mr. Leeber's affidavit. The Supreme Court of Appeals of West Virginia has emphasized the need for the Board to perform an adequate analysis of the evidence in every claim. *See Workman v. ACNR Resources, Inc*., 251 W. Va. 796, 916 S.E.2d 638 (2025), and *Gwinn v. JP Morgan Chase*, No. 23-172, 2024 WL 4767011 (W. Va. Nov. 13, 2024) (memorandum decision).

We review the Board's opinions under a clearly wrong standard of review. However, this deferential standard does not relieve the Board from addressing and weighing the evidence submitted and the arguments made by the parties. Because the

Board's May 30, 2025, order relies on the August 17, 2022, Interlocutory Order, which found that Mr. Vandall's claim is compensable and subject to the presumption, we vacate both orders, and remand to the Board to provide sufficient analysis of the evidence in this claim. In remanding this matter to the Board to address and weigh the evidence before it, we emphasize that our decision should not be seen as somehow forecasting the outcome of the case.

      Accordingly, we vacate the Board's August 17, 2022, and May 30, 2025, orders, and remand this case to the Board for further proceedings consistent with this decision.

Vacated and Remanded.

**ISSUED:** February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White